## DAVIS v. BUDD.

1. **Instructions:** MUST CONFORM TO EVIDENCE. An instruction which ignores a portion of the evidence by which the rights of the parties must be determined, is erroneous.

2. **Contract:** EXECUTORY: TO DELIVER CORN: TITLE AND RISK OF DAMAGE. Where defendant signed a contract "to deliver to plaintiff, in May, June and July, 1,600 bushels of dry, sound, shelled corn," and defendant had at the time of the contract 3,000 bushels of such corn, out of which he intended to fill the contract, but the time of delivery was by agreement postponed from time to time until July 20, when the corn was found recently to have become damaged by heating, *held* that there was no sale of any specific corn; that the contract was executory, and might have been performed by the delivery of any corn of the required quality, and that plaintiff did not, by securing a postponement of the date of delivery, assume the risk of damage to defendant's corn.

*Appeal from Cass Circuit Court.*

FRIDAY, DECEMBER 8.

ACTION upon a contract to deliver corn. The plaintiff avers in his petition that the defendant entered into a written contract with him, whereby he agreed to deliver to him at Anita, Iowa, in May, June and July, 1881, sixteen hundred bushels of dry, sound, shelled corn, at twenty-six cents per bushel; that the sum of $5.00 was paid by him to the defendant to apply

upon the contract and that the defendant had wholly failed to deliver the corn as agreed.

The defendant for answer averred that he offered to perform his contract by a tender of corn of the requisite quality within the time agreed upon, that the plaintiff refused to receive any corn, and afterward the defendant tendered back the $5.00 received, and rescinded the contract. There was a trial by jury, and verdict and judgment were rendered for the defendant. The plaintiff appeals.

*A. S. Churchill*, for appellant.

*L. L. Delano*, for appellee.

ADAMS, J.—The court instructed the jury in substance that if the defendant at any time during the months of May, June and July, had the amount and quality of corn called for by the contract, and offered to begin to deliver it, and plaintiff refused to receive it, such refusal was sufficient ground for rescinding the contract, and if the defendant did rescind it and tender back the money received, the plaintiff could not recover. The plaintiff assigns the giving of this instruction as error:

He insists that it is not applicable to the evidence. The evidence shows that on the 20th day of May the defendant had about three thousand bushels of corn of the quality called for by the contract; that on that day he notified the plaintiff that he desired to perform his contract by delivering the corn called for by it; that the plaintiff replied that his elevator was full, that he could get no cars, and could receive no corn, and asked the defendant to postpone delivery, and that the defendant consented to such postponement; that about the first of June the defendant again offered to perform his contract, and with the same result; that on the 20th day of July he made a tender of a load of corn, though not of the quality called for by the contract, and the plaintiff refusing to receive it the defendant rescinded the contract, tendering back the money

which he had received upon it. The evidence further shows that between the 20th day of May and the 20th day of July the corn which the defendant had on hand, and by the delivery of which he expected to perform his contract, became damaged by heating.

His position is that notwithstanding such damage and notwithstanding the corn became inferior in quality to the corn called for by the contract, he was nevertheless entitled to be allowed to perform his contract by the delivery of the damaged corn, if he had the same corn on hand in May and June, and it was of the quality called for by the contract at the time he offered to perform it. The instruction of the court above set out, if sustained under the evidence, must, we think, be sustained upon this theory.

The question presented is as to whether the corn which the defendant had on hand to the amount of sixteen hundred bushels, the amount called for by the contract, was held from May 20 to July 20 at the plaintiff's risk, so far as damage from heating was concerned. In considering this question we shall assume, as the evidence tends to show, that there was no lack of care on the part of the defendant. But conceding that he bestowed proper care, we have to say that we think that the risk was not on the plaintiff. The contract is executory. No sale of corn took place. The defendant seems to think otherwise. His defense must be regarded as based upon the theory that, though the contract does not call for a specific lot of corn, nor part of a specific mass, the fact that he had a mass of corn on hand of over sixteen hundred bushels, the amount called for, and of the requisite quality, and offered to make a delivery of sixteen hundred bushels from the mass, had the effect to transfer to the plaintiff the title to that amount, and to impose upon him all risk of damage to such corn from heating.

Whether, if the contract had called for a part of a specific mass, the title to such part could under the circumstances be deemed to have passed, we need not determine. As tending

to show that the title could not be deemed to have passed, see *Scudder v. Worster et al.*, 11 Cush., 573. As tending to show that it might, see *Chapman v. Shepard*, 39 Conn., 413, and *Waldron v. Chase*, 37 Maine, 414. Whatever the true rule may be upon this question, it seems to be conceded that title to part of a mass does not pass before severance, unless the contract relates specifically to such mass.

In the case at bar the contract called merely for corn of a specific quality, and could be performed by the delivery of any corn whatever of such quality. The precise language of the contract is as follows: "I hereby agree to deliver to A. Davis, at Anita, Iowa, in May, June and July, 1881, sixteen hundred bushels of dry, sound, shelled corn, at twenty-six cents per bushel. Received five dollars on the within contract." This contract the defendant could perform by delivering any corn of that quality at any time within the three months specified. Afterward a slight modification was made. The plaintiff on the 20th day of May, and later about the 1st of June, requested a postponement of delivery, or waiver by the defendant of his right to make delivery at those times, and the request was granted. In no other respect was the contract changed. It could still be performed by the delivery of any corn whatever of the specified quality. If the defendant apprehended danger from heating when he was ready to make delivery, or if the circumstances were such that he should have apprehended such danger, his true course was to insist upon making delivery, and, if the plaintiff refused to receive the corn, to rescind the contract, without consenting to a postponement of delivery, and hold the plaintiff for the difference between the contract price and market value, if the latter was less than the former; or, if he so elected, he might, whether apprehending danger from heating or not, have sold his corn, and taken his chances of performing his contract later by the delivery of other corn. The instruction given ignores the evidence showing that the defendant consented to a postponement of delivery, and never insisted upon making

delivery until July 20, neither at which time, nor afterwards, was the corn tendered of the requisite quality. In giving the instruction we think that the court erred.

REVERSED.